# EXHIBIT 1-C1

June 27, 2014


KeraNetics LLC Board of Directors
Richard Dean Biomedical Research Building
Suite 168
391 Technology Way
Winston Salem, NC 27101

Via email:
kim.westmoreland@keranetics.com
todd.johnson@keranetics.com
lakoman@wakehealth.edu
rblank@stephens.com
dflow@flowauto.com
whawkins@immucor.com
maranatha@thekeithcorp.com


Re: Breach of Fiduciary Duty by Messrs. Todd Johnson and Kim Westmoreland


To the KeraNetics Board of Directors:

As you are well aware, I filed suit against Defendants KeraNetics LLC and Messrs.
Kim Westmoreland and Todd Johnson on November 5, 2013 in Montgomery County
Circuit Court, Commonwealth of Virginia. As detailed in the Complaint,
incorporated herein by reference, I have asked the Court for relief on seven counts,
six of which still stand and are scheduled for trial in December 2014. Initial
discovery in this case has served to solidify the Complaint, as well as raise several
new actionable issues. Paramount to KeraNetics are those actions of Messrs. Kim
Westmoreland and Todd Johnson that constitute breaches of their fiduciary duty to
the Company. As more fully enumerated below, Messrs. Westmoreland and Johnson
have breached their fiduciary duty to KeraNetics by taking the following actions:

1. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by
   forcing Dr. Mark Van Dyke out of aspects of research related to KeraNetics,
   even though they knew (and had themselves previously stated on numerous
   occasions and incorporated into stock offering documents of KeraNetics) that
   his continued involvement in such research was indispensable to the success
   of that research and of KeraNetics' business.
2. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by
   failing to make any attempt to negotiate a 5-year consulting agreement with
   Dr. Mark Van Dyke as called for in the KeraNetics' Operating Agreement,
   thereby denying the Company of Dr. Van Dyke's acknowledged expertise in
   keratin biomaterials.

3. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by failing to exercise reasonably informed business judgment in deciding to pursue development of Cosmetic and Personal Care Products, despite their own recognized lack of expertise in Cosmetic and Personal Care Products and in maintaining compliance with federal laws relating to Cosmetic and Personal Care Products, and despite the established competition in this market and extensive proliferation of competing keratin materials-related patents, and without obtaining advice from experts to remedy this lack of expertise and obvious competitive disadvantages.

4. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by pursuing development of Cosmetic and Personal Care Products despite such activities clearly falling outside of the terms and conditions of the WFUHS License Agreement, actions that constitute breaches of that Agreement to which Dr. Mark Van Dyke is a third party beneficiary.

5. Upon information and belief, Westmoreland and Johnson breached their fiduciary duty to KeraNetics by causing KeraNetics to shift the bulk of its resources from the Therapeutic Subfields to Cosmetic and Personal Care Products, thus abandoning a viable business strategy in favor of a business strategy that was not viable, diluted resources, and which caused KeraNetics to miss critical milestones that were not only important to the Company but were required to maintain the WFUHS License Agreement.

6. Upon information and belief, Westmoreland and Johnson breached their fiduciary duty to KeraNetics by causing KeraNetics to spend unreasonably large sums of investor capital on development of Cosmetic and Personal Care Products, despite the obvious disadvantages, rather than those activities that were required to maintain the WFUHS License Agreement.

7. Upon information and belief, Westmoreland and Johnson breached their fiduciary duty to KeraNetics by causing KeraNetics to divert funds from federally funded Grants to the development of Cosmetic and Personal Care Products, to the production and testing of compounds not covered by Grant funding, and to other purposes not covered by the Grants, thus violating the terms of the Grants and federal law, and exposing KeraNetics to potential liability thereunder.

8. Upon information and belief, Westmoreland and Johnson breached their fiduciary duty to KeraNetics by causing KeraNetics to insert questionable and false science and other false statements into its FDA submissions, thus violating federal law and exposing KeraNetics to potential liability thereunder.

9. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by sabotaging the KeraGenics® Nerve clinical trial, which was awarded federal funding almost four years ago, in pursuit of their strategy to keep the Cosmetic and Personal Care Products from being classified as biologic products and in order to prevent Dr. Mark Van Dyke's research lab at Virginia Tech from receiving a $369,000 subaward to complete studies necessary to initiate the clinical trial.

10. Upon information and belief, Westmoreland and Johnson breached their fiduciary duty to KeraNetics by a series of missteps, false starts and other bad decisions that have caused KeraNetics to spend more than $20 million (including substantial salary payments to Westmoreland and Johnson) without managing to initiate a single clinical trial, including one for which substantial federal funding was available, without achieving a single milestone in the WFUHS License Agreement.

11. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by changing Key Personnel, Scope of Work, and/or Budgets on several federally funded Grants without receiving prior written consent as required by the terms and conditions of the Grant Agreements, thereby breaching the Agreements and exposing KeraNetics to potential liability thereunder, and causing damages to the federal agencies and to Dr. Mark Van Dyke as a third party beneficiary.

12. Upon information and belief, Westmoreland and Johnson breached their fiduciary duty to KeraNetics by causing KeraNetics to notify federal funding agencies that no changes to Key Personnel had been made under these Grants, actions that clearly constitute false statements to the federal government, thereby violating federal law and exposing KeraNetics to potential liability thereunder.

13. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by pursuing the development of an injectable dermal filler, a Therapeutic Subfield that falls outside of the terms and conditions of the WFUHS License Agreement, thereby causing breach of the WFUHS License Agreement and causing damages to WFUHS and to Dr. Mark Van Dyke as a third party beneficiary.

14. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by pursuing patent applications on which Dr. Mark Van Dyke should have been identified as an inventor, thereby misappropriating Dr. Van Dyke's intellectual property and violating the terms of the WFUHS License Agreement and causing damage to WFUHS and to Dr. Mark Van Dyke as a third party beneficiary.

15. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by pursuing patent applications that utilized Dr. Mark Van Dyke's Know How, as defined in the WFUHS License Agreement, thereby causing the publication of Dr. Van Dyke's trade secret information and causing damage to Dr. Van Dyke by misappropriation of his trade secrets.

16. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by causing the breach of terms and conditions of the WFUHS Visiting Scientist Agreement by failing to assign patent rights to WFUHS arising from activities described in the Visiting Scientist Agreement.

17. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by causing the termination of the CDMRP Osteoporosis Subaward to Virginia Tech (VT), an action that removed Dr. Mark Van Dyke as Key Personnel, without prior written approval from the CDMRP, thereby breaching the terms and conditions of the Grant Agreement with CDMRP and causing

damages to the federal government and to Dr. Van Dyke as a third party beneficiary.

18. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by causing KeraNetics to notify the CDMRP that the Subaward to VT had been terminated for cause when in fact it had been terminated for convenience, thereby making a false statement to the federal government, an action that violates federal law and exposes KeraNetics to potential liability thereunder.

19. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by causing KeraNetics to fail to pay VT more than $80,000 due under the Subaward Agreement for work completed prior to termination, causing damage to VT and thereby exposing KeraNetics to potential civil liabilities.

20. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by failing to properly execute important Company documents that establish the legitimacy of the Series C funding round.

21. Westmoreland and Johnson breached their fiduciary duty to KeraNetics by proffering forged documents to a court of law in the Commonwealth of Virginia.

In light of the foregoing, and in my capacity as a shareholder and member of KeraNetics LLC, I make the following demands on the KeraNetics Board of Directors:

1. Retain appropriate counsel and initiate a review of the foregoing 21 breaches of fiduciary duty in a manner that is independent of Messrs. Westmoreland and Johnson and eliminates any potential bias or conflicts of interest. Such a review should include an independent investigation by said counsel of the documentary evidence of said 21 breaches already in KeraNetics' possession.

2. Cease and desist all activities related to any federally funded Grants.

3. Call an emergency meeting of the Board of KeraNetics, including Dr. Mark Van Dyke, to demand the resignations of Messrs. Kim Westmoreland and Todd Johnson and Dr. Luke Burnett from their positions with the Company, and if they do not comply, take such actions as necessary to terminate them from their positions.

4. Cease and desist all activities related to the filing or prosecution of any patent applications or other activities that would publish Dr. Mark Van Dyke's Know How or other trade secret information.

5. Immediately inform all federal agencies from which KeraNetics has received funding of potential breaches of the terms and conditions of related award Agreements, as well as state that KeraNetics has ceased all activities under the Grants and is beginning its own investigation of said breaches.

6. Begin an investigation of all federally funded Grants awarded to KeraNetics for compliance with the full terms and conditions of each award, specifically any changes in Key Personnel, Scope of Work or Budget, required reporting and proper allocation of funding, and for false statements made to the federal government.

7. Cease and desist all activities related to the pursuit of Keratin Cosmetic Sciences (KCS) and the development of Cosmetic and Personal Care Products,

as well as any other activities that may fall outside the scope of the WFUHS License Agreement.

8. Undertake a complete audit of KeraNetics personnel salary allocations to all federally funded Grants in comparison to said personnel activities allocated to Cosmetic and Personal Care Product-related activities or other activities that may fall outside of the Scopes of Work of the various federally funded Grants.

9. Immediately inform WFUHS of potential breaches of the terms and conditions of the WFUHS License Agreement, stating that all activities falling outside of the scope of said License Agreement have ceased, and undertake such actions as called for in the License Agreement to remedy such breaches.

10. File a lawsuit against Messrs. Kim Westmoreland and Todd Johnson on behalf of KeraNetics LLC for breach of fiduciary duty on the basis of the foregoing

11. Call an emergency meeting of the Members of KeraNetics LLC to inform them of the actions of Messrs. Westmoreland and Johnson and explain the actions taken by the Board in response.

12. Undertake the restructuring of KeraNetics LLC by working with Dr. Mark Van Dyke to identify a new management team who can work toward remedies of said breaches by Messrs. Westmoreland and Johnson and take such actions as necessary to ensure the financial stability of the Company.

13. Reimburse Dr. Mark Van Dyke for any and all legal expenses incurred as a result of his having undertaken legal action against Messrs. Kim Westmoreland and Todd Johnson.

I stress to you the importance of demand #1 as several of the breaches enumerated above are not incorporated into the current Amended Complaint filed in Virginia and therefore have not, to my knowledge, been reviewed by counsel. You should also be aware that while the former breach of fiduciary duty claims against Messrs. Westmoreland and Johnson previously contained in the Virginia lawsuit have been dismissed, that may not constitute a legal finding outside of Virginia, nor might it reflect in any way on the potential validity of said claims in another jurisdiction. It also may not mean that new breach of fiduciary claims against Messrs. Westmoreland and Johnson cannot be filed within the Commonwealth of Virginia.

I further demand that the Board respond to this letter within 30 days, by July 27, 2014, in writing to me at the email address provided below. Failure to respond by this date will be viewed as the Board's denial of these claims and will force me to pursue my rights as a KeraNetics LLC member through other legal remedies.

Respectfully Submitted,

Mark Van Dyke, PhD
Member, KeraNetics LLC
knmember@gmail.com

# EXHIBIT 1-C2

July 18, 2014

KeraNetics LLC Board of Directors
Richard Dean Biomedical Research Building
Suite 168
391 Technology Way
Winston Salem, NC 27101

Via email:
kim.westmoreland@keranetics.com
todd.johnson@keranetics.com
lakoman@wakehealth.edu
rblank@stephens.com
dflow@flowauto.com
whawkins@immucor.com
maranatha@thekeithcorp.com

Re: False statements to the federal government by KeraNetics LLC

To the KeraNetics Board of Directors:

Pursuant to my letter dated June 27, 2014, the Board is aware of actions by
KeraNetics LLC, in particular items 12 and 18 that refer to false statements made to
the federal government by KeraNetics. In response to Freedom of Information Act
(FOIA) requests, I have received documents from federal agencies that have
provided KeraNetics with research funding under grant/contract awards. As I'm
sure you are aware, KeraNetics is contractually required to provide periodic reports
to the federal funding agencies and to otherwise communicate with them on matters
concerning conduct of the funded research. As part of the reports, KeraNetics is
required to inform the federal government of changes that the government has
determined would affect conduct of the funded research. For example, awardees
are required to state whether changes to Key Personnel, Scope of Work, and/or
Budget have been made. On more than one occasion, KeraNetics has reported that
there have been no changes to Key Personnel, Scope of Work, and/or Budget when
this was in fact not the case. These changes themselves, taken by KeraNetics
without prior written approval from the funding agency, represent breaches of the
respective contracts. Moreover, reporting that no such changes have occurred
constitutes false statements to the federal government. In addition, KeraNetics has
made other false statement in its communications to the federal government
regarding other aspects of these research projects. As examples, I offer the
following instances from initial inspection of the FOIA documents:

1. On July 19, 2013 KeraNetics falsely stated in their research progress report
   to the National Institutes of Health (NIH) that no changes to Key Personnel
   will be made in the next budget period. In fact, one Key Personnel identified

in the grant application approved by the NIH, Dr. Mark Van Dyke, has never performed any work on this project, nor was requested to do so by KeraNetics. KeraNetics has never corrected this false statement in subsequent communications.

2. On June 10, 2013, KeraNetics informed the federal government that a sub-award contract to "Mark Van Dyke and Virginia Tech" had been terminated for cause. In fact, KeraNetics had demanded it be terminated for convenience. These are two different contractual conventions with materially different requirements and subsequent actions associated with them.

3. On July 31, 2013, KeraNetics stated in an email to the federal government that "we're not behind where we would have been as the VT protocol submission was not adequate and would have taken at least this long to fix." In fact, the VT protocol was in place to receive animals within the time frame set when KeraNetics, not VT, ordered animals for this project. The fact that KeraNetics delayed ordering these animals, and otherwise delayed the project in excess of 4 months by failing to provide materials under an agreement that required them to do so, is not mentioned in any of the communications from KeraNetics to the government pertaining to this project.

It is clear from the FOIA documents received and reviewed thus far that KeraNetics may have committed numerous violations of the False Claims Act (FCA). KeraNetics has made these false statements and submitted these false records to the federal government with the full knowledge that they were false, and for purposes of concealing breaches of contractual terms and conditions, denying the government their full rights under these agreements, and of obtaining continued payments from the federal government under the grant agreements. The seriousness of these acts by KeraNetics cannot be understated as the FCA carries penalties of up to $10,000 for each act and treble damages. As KeraNetics has received more than $15M in federal funding, penalties and monetary damages could be severe, and thereby drastically affect the value of the company and shares therein. Therefore, in light of the foregoing and in my capacity as a shareholder and member of KeraNetics LLC, I make the following demands of the KeraNetics Board of Directors:

1. Retain appropriate counsel and initiate a review of all current and previous federally funded projects including all contracts and related documents, and all statements, whether in submitted reports or other communications, made to the federal government to determine if they are in compliance with the FCA.

2. Cease and desist all activities related to any federally funded projects.

3. Immediately inform all federal funding agencies from which KeraNetics is currently or has previously received funding of potential violations of the FCA, that KeraNetics has ceased all activities under current federally funded projects, and that KeraNetics is beginning its own internal investigation.

4. Call an emergency meeting of the Members of KeraNetics LLC to inform them of the actions of KeraNetics and explain the actions taken by the Board in response.
5. If any evidence is found of a violation of the FCA, immediately demand the resignation of the personnel making the false claim(s), as well as Messrs. Kim Westmoreland and Todd Johnson, and Dr. Luke Burnett for their role as the management team tasked with the responsibility for these funding awards, and if they do not comply, take such actions as necessary to terminate them from their positions.
6. If any evidence is found of any violation of the FCA, immediately inform the US Attorney and proceed with any remedies as required under US law.

I further demand that the Board respond to this letter within 30 days, by August 17, 2014, in writing to me at the email address provided below. Said response should include specifically what actions have been taken by the Board regarding my demands enumerated above, any demands that the Board refuses to address, and any demands that the Board is in the process of addressing along with a projected timeline for addressing said in process demands. Failure to respond by this date will be viewed as the Board's denial of these allegations and refusal to address these potential violations of the FCA.

Respectfully Submitted,

Mark Van Dyke, PhD
Member, KeraNetics LLC
knmember@gmail.com

# EXHIBIT 1-C3

July 23, 2014

KeraNetics LLC Board of Directors
Richard Dean Biomedical Research Building
Suite 168
391 Technology Way
Winston Salem, NC 27101

Via email:
kim.westmoreland@keranetics.com
todd.johnson@keranetics.com
lakoman@wakehealth.edu
rblank@stephens.com
dflow@flowauto.com
whawkins@immucor.com
maranatha@thekeithcorp.com

Re: Breach of agreements with WFUHS

To the KeraNetics Board of Directors:

Pursuant to my letter dated June 27, 2014, the Board is aware of actions by
KeraNetics LLC, in particular items 4, 13, 14, 15, and 16 that refer to actions that
have violated agreements between KeraNetics and WFUHS. Although I am a third
party beneficiary to certain of these agreements, I bring the following to the
attention of the Board in my capacity as a shareholder and member of KeraNetics
LLC, and in the interest of the Company and all its shareholders.

As you know from the WFUHS License Agreement, KeraNetics has certain
intellectual property (IP) rights that it has agreed to license from WFUHS that are
defined within the terms of the "Field," and related to both "Patent Rights" and
"Know How." The License also defines "Future Patent Rights" and "Improvement
Patent Right" as arising out of certain collaborative activities contemplated under a
second agreement, the Sponsored Research Agreement (SRA), as well as other
sponsored research activities performed in collaboration with WFUHS and its
employees and students. As the Board is also well aware, the License defines the
Field, Patent Rights and Know How very specifically, and restricts KeraNetics' rights
within this IP to only certain applications and activities. Moreover, Know How,
which includes trade secrets belonging to WFUHS and myself, are licensed non-
exclusively to KeraNetics within the Field. KeraNetics also signed a Visiting Scientist
Agreement, which, among other things, contains certain confidentiality and IP
provisions. These provisions prevent KeraNetics from disclosing WFUHS
confidential information to outside parties and from filing any patent applications
on its own behalf for any inventions first conceived or reduced to practice, solely or
jointly with WFUHS, while on WFUHS premises, and further requires KeraNetics to

promptly deliver any written instruments of such inventions. KeraNetics has violated these agreements in several ways:

1. For some time, KeraNetics has been actively conducting and pursuing Cosmetic and Personal Care product development, product testing, clinical testing, and commercialization partnerships. Further, KeraNetics has announced that it has formed another company or subsidiary company, Keratin Cosmetic Sciences (KCS), and granted sublicense to "its technology." Since the basis of the keratin materials used for its Cosmetic and Personal Care-related activities is derived from the Know How as defined in the License, KeraNetics has no rights to engage in these activities as they are clearly outside the Field and have therefore breached the License in multiple ways as a result.

2. KeraNetics has now disclosed that they have been, and are actively engaged in, the development of an injectable dermal filler product and have filed at least one patent application specifically related to an injectable dermal filler product. Such activities also fall outside the Field and therefore constitute a breach of the License. Moreover, there is evidence that Drs. Mark Van Dyke and Maria Rahmany may have contributed to this particular invention but have not been included as inventors, thereby possibly creating another breach of the License and Visiting Scientist Agreements.

3. Any Know How provided under the License must be kept confidential and cannot be claimed by KeraNetics as its own IP. KeraNetics knew that Dr. Van Dyke had conducted extensive research on keratin biomaterials over a 10 year period prior to the formation of KeraNetics and was the source of the Know How in the License. Such Know How now appears in patent applications filed on behalf of KeraNetics that include no WFUHS employees as inventors as would be required by both the License and Visiting Scientist Agreements. Inventors that are listed on these patent applications, and possibly others filed by KeraNetics, are current KeraNetics employees that previously received extensive training in keratin biomaterials by Dr. Van Dyke when working for him as WFUHS employees. Moreover, KeraNetics' employees now listed as inventors on these patent applications, as well as KeraNetics' employees subject to the Visiting Scientist Agreement, worked in his WFUHS research lab and attended numerous meetings of Dr. Van Dyke's research group, both of which occurred on WFUHS premises. The research records of former WFUHS employees, of other WFUHS employees working with Dr. Van Dyke, and of Dr. Van Dyke himself, are the source of the inventions now claimed by KeraNetics. Therefore, these patent applications represent illegitimate claims of IP rights by KeraNetics and any attempts to secure them are violations of the License and Visiting Scientist Agreements.

4. Both the License and Visiting Scientist Agreements contain provisions whereby KeraNetics and its employees must maintain the confidentiality of certain information. Through numerous activities associated with these two Agreements, as well as a Sponsored Research Agreement (SRA), KeraNetics and its employees became aware of confidential information belonging to

4. Call an emergency meeting of the Members of KeraNetics LLC to inform them of the actions of KeraNetics and explain the actions taken by the Board in response.
5. If evidence of even a single violation of any of these agreements is determined to have taken place, immediately call an emergency meeting of the Board of KeraNetics to demand the resignations of Messrs. Kim Westmoreland and Todd Johnson, and Dr. Luke Burnett from their positions with the Company, and if they do not comply, take such actions as necessary to terminate them from their positions, for their role as the management team tasked with compliance with these agreements.
6. If evidence of even a single violation of any of these agreements is determined to have taken place, immediately pursue the remedies as called for in Section 17.10 of the License Agreement.

I further demand that the Board respond to this letter within 30 days, by August 22, 2014, in writing to me at the email address provided below. Said response should include specifically what actions have been taken by the Board regarding my demands enumerated above, any demands that the Board refuses to address, and any demands that the Board is in the process of addressing along with a projected timeline for addressing said in process demands. Failure to respond by this date will be viewed as the Board's denial of these allegations and refusal to address these issues, in which case information regarding these breaches will be communicated to WFUHS.

Respectfully Submitted,

Mark Van Dyke, PhD
Member, KeraNetics LLC
knmember@gmail.com

# EXHIBIT 1-C4

July 25, 2014

KeraNetics LLC Board of Directors
Richard Dean Biomedical Research Building
Suite 168
391 Technology Way
Winston Salem, NC 27101

Via email:
kim.westmoreland@keranetics.com
todd.johnson@keranetics.com
lakoman@wakehealth.edu
rblank@stephens.com
dflow@flowauto.com
whawkins@immucor.com
maranatha@thekeithcorp.com

Re: Fraud against the federal government by KeraNetics LLC

To the KeraNetics Board of Directors:

Pursuant to my letters dated June 27, 2014 and July 18, 2014, the Board is aware of
actions by KeraNetics LLC that include in some cases, false statements to the federal
government, and in others the deliberate withholding of information required by
the federal government, and in both cases relating to grants and contracts awarded
to KeraNetics.

It is a commonly known fact, and certainly well known to KeraNetics through their
federal contracting activities, that a central component of the research funding
process is to submit proposals to the federal government that contain specific
descriptions of the research to be performed, the names of key scientists who will
perform it along with their credentials to conduct such research, the location,
facilities and equipment available for the conduct of such research, and an estimated
budget, among other details. The federal government, in turn, carefully evaluates
these aspects for purposes of making funding decisions and relies almost exclusively
on the representations made in the grant proposal. After extensive evaluation,
award decisions are made and the federal government ensures their rights and
interests are protecting by entering into extensive contracts and other agreements
with awardees that contain many specific terms and conditions, among which
include the entire grant proposal and all of its representations. The specific
descriptions contained in the grant proposal are considered so essential by the
federal government that the awardee is contractually barred from making any
changes to, among other things, Key Personnel, Scope of Work, and Budget. Such is
the process KeraNetics has undergone many times and such are the terms and

conditions of numerous contracts and agreements into which KeraNetics has entered.

In response to Freedom of Information Act (FOIA) requests, I have received documents from federal agencies that have provided KeraNetics with research funding under grant/contract awards. It is clear from these documents that KeraNetics has failed in its fundamental contractual obligations to properly inform the federal government of changes made to the research activities associated with many of these grants. Specifically, KeraNetics has made changes to Key Personnel, Scope of Work, and Budget without seeking prior written approval as required under the agreements. In addition, KeraNetics has made either no statements, or in some cases false statements, to conceal these breaches. In so doing, KeraNetics may have perpetrated fraud against the federal government for purposes of deceiving the government, to cause them to provide continued funding, and thereby to act in a way that has caused loss of the governments' rights and produce legal injury.

KeraNetics has these documents in its own possession and indeed, a much more complete record of communications and agreements than are reflected in the limited FOIA response I have received. I therefore demand that the Board initiate its own independent review of this situation. Specifically, I call upon the Board to investigate the entirety of each grant proposal, its associated contractual documents, as well as each and every communication, request, modification, amendment, and report associated with each and every grant or contract. I further demand that the Board thoroughly evaluate these documents for any evidence that false or misleading information was provided to federal officials, or that relevant information was concealed that should have been disclosed, that would have deprived the federal government of exercising their rights under the relevant agreement.

The seriousness of these acts by KeraNetics cannot be understated as federal fraud laws include penalties such as fines, restitution, and incarceration of individuals. As KeraNetics has received more than $15M in federal funding, penalties and monetary damages could be severe, and thereby drastically affect the value of the company and shares therein. Therefore, in light of the foregoing and in my capacity as a shareholder and member of KeraNetics LLC, and in order to protect the rights of all shareholders, I make the following demands of the KeraNetics Board of Directors:

1. Retain appropriate counsel and initiate a review of all relevant documents as described above.
2. Immediately cease and desist all activities related to any federally funded projects.
3. Immediately inform all federal funding agencies from which KeraNetics is currently or has previously received funding that KeraNetics may have made false representations of fact and/or withheld pertinent information related to these agreements, that KeraNetics has ceased all activities under current

federally funded projects, and that KeraNetics is beginning its own internal investigation.

4. Call an emergency meeting of the Members of KeraNetics LLC to inform them of the actions of KeraNetics and explain the actions taken by the Board in response.

5. If any evidence is found of false representations of fact made by KeraNetics that may constitute fraud against the federal government, immediately demand the resignation of the personnel making the false representation(s), as well as Messrs. Kim Westmoreland and Todd Johnson, and Dr. Luke Burnett for their role as the management team tasked with the responsibility for these funding awards, and if they do not comply, take such actions as necessary to terminate them from their positions.

6. If any evidence is found of fraud against the federal government, immediately inform the US Attorney and proceed with any remedies as required under US law.

I further demand that the Board respond to this letter within 30 days, by August 24, 2014, in writing to me at the email address provided below. Said response should include specifically which federal funding agencies have been contacted and what information has been conveyed to them. Failure to respond by this date will be viewed as the Board's denial of these allegations and refusal to address these potential violations of federal law, in which case I will be forced to contact the agencies directly and inform them of the information I have obtained through my FOIA requests.

Respectfully Submitted,

Mark Van Dyke, PhD
Member, KeraNetics LLC
knmember@gmail.com

# EXHIBIT 1-C5

July 30, 2014

KeraNetics LLC Board of Directors
Richard Dean Biomedical Research Building
Suite 168
391 Technology Way
Winston Salem, NC  27101

Via email:
kim.westmoreland@keranetics.com
todd.johnson@keranetics.com
lakoman@wakehealth.edu
rblank@stephens.com
dflow@flowauto.com
whawkins@immucor.com
maranatha@thekeithcorp.com

Re:  Misappropriation of Intellectual Property

To the KeraNetics Board of Directors:

Pursuant to my letter dated July 23, 2014, the Board is aware of several agreements KeraNetics has entered into relating to intellectual property (IP), specifically, patentable inventions.  It has come to my attention that KeraNetics and its management team may not have followed proper procedure regarding inventions first conceived and/or reduced to practice by others, specifically Dr. Maria Rahmany, or may have knowingly made false claims to the Montgomery County Virginia Circuit Court.

From its long-standing relationship with Wake Forest University Health Sciences (WFUHS) and the numerous agreements between them, KeraNetics is aware that WFUHS claims ownership of any inventions first conceived or reduced to practice by its employees, regardless of whether they are collaborating with an outside entity, and take great care to secure assignment of patentable inventions as part of their research agreements and employee policies.  KeraNetics is also aware that Dr. Rahmany was at all times from the formation of KeraNetics' in 2008 until at least April 2013, an employee of WFUHS and never an employee of KeraNetics.  Despite these facts, KeraNetics now claims sole ownership of an invention to which Maria Rahmany may have contributed as an inventor.

In a motion filed in Montgomery County Virginia Circuit Court on March 5, 2014, KeraNetics attached an exhibit showing that KeraNetics had filed the following patent application:

- Dermal Fillers Comprising Keratin Biomaterials, USPTO application filed December 13, 2013

In a Counterclaim filed in Montgomery County Virginia Circuit Court on June 20, 2014, KeraNetics stated in paragraphs 28 through 30 that Maria Rahmany did the following during an internship with KeraNetics in 2011 that relates to said patent application: a) worked toward the "development of a dermal filler," b) "successfully developed a brownish substance that, when activated by exposure to light, expanded, became firm, was resistant to applied pressure and was expected to hold its shape for extended periods of time," and c) "reported these results to KeraNetics in a summary presentation she prepared at the conclusion of her internship."

However, Dr. Rahmany testified repeatedly in her deposition on June 25, 2014 that she did no such work. For example, on page 36 and 37 of Dr. Rahmany's deposition transcript, lines 21-22 and lines 1-6, respectively, Dr. Rahmany and Defendant's attorney, Cathy Hinger, had the following exchange:

*Q. What did -- what did KeraNetics tell you about their interest in pursuing keratin-based skin care products?*

*A. I don't remember the specifics. Yeah, I don't remember the specifics on -- I don't know that we focused on that. I think my focus was mostly on the hair care, so that's what the bulk of our conversations were about.*

Also, on page 41, lines 1-19, the following exchange took place:

*Q. Okay. Did you have an understanding of the purpose of that group, why it was that select group on those weekly calls?*

*A. I understood why I was there, because of my internship. And I understood that Patrick was there because he had some experience in the field. And I assumed that Kim, Todd and Luke were there because they were management of KeraNetics.*

*Q. During those calls, did you ever hear them talk about whether using a subdermal filler skin care product might require FDA approval?*

*A. No.*

*Q. Did you have discussions about that with anybody at KeraNetics?*

*A. No.*

*Q. Did you hear any, you know, water cooler talk about whether or not using a subdermal filler product, keratin, would require an FDA approval?*

*A. No.*

In yet another exchange on page 47, lines 1-4, Dr. Rahmany reiterates that her project had nothing to do with keratin-based dermal fillers:

*Q. And did any of the crosslinking experiments that you did have an alternative application to trying to develop a dermal filler product?*

*A. No.*

Clearly there are stark differences in the claims KeraNetics has made to the Montgomery County Circuit Court and Dr. Rahmany's sworn testimony. If the statements in KeraNetics' Counterclaim are correct, it is important to note that Dr. Rahmany was an employee of WFUHS at that time, not a KeraNetics employee and under no agreement with KeraNetics, and therefore was bound by WFUHS employment policy, including its IP policy that would require her to assign inventions that she first conceived or reduced to practice to WFUHS. If the statements in KeraNetics' Counterclaim are incorrect and Dr. Rahmany's sworn testimony is correct, then KeraNetics has made a false claim to the Court.

Considering the foregoing, and in either case, KeraNetics' claim of sole ownership of this invention is wholly inappropriate and may have violated state laws and misrepresented the invention to the federal government. As stated in my letter dated July 23, 2014, such actions by KeraNetics and its management team may represent breaches of several agreements with WFUHS, misappropriation of trade secrets, and/or misappropriation of IP belonging to either or both of WFUHS and VT, and therefore represent risks to the company that could dramatically affect the value of the company and shares therein. If the statements in the Counterclaim are not valid, KeraNetics has placed itself at considerable risk vis-à-vis the Virginia lawsuit. Therefore, in my capacity as a KeraNetics member and shareholder, I demand that the Board take the following actions:

1. Retain appropriate counsel and immediately initiate a thorough review of the research records and presentation materials of Dr. Rahmany that KeraNetics claims she produced during her internship and determine the validity of KeraNetics' statements in the Counterclaim filed June 20, 2014.
2. If KeraNetics' statements in the Counterclaim are found to be valid, thoroughly review Dr. Rahmany's research records in light of the claims in the patent application shown above to determine if her internship work represents the first reduction to practice of any claims in said application.
3. If Dr. Rahmany is determined to be an inventor on said patent application, immediately inform the legal and technology management offices at WFUHS that IP potentially belonging to WFUHS may have been misappropriated by KeraNetics and take immediate action to inform the US Patent and Trademark Office of this misappropriation.

4. If no evidence of Dr. Rahmany's work on keratin dermal fillers as claimed by KeraNetics can be identified, immediately inform the Montgomery County Virginia Circuit Court of the false statements in the Counterclaim filed June 20, 2014.
5. Call an emergency meeting of the Members of KeraNetics LLC to inform them of the actions of KeraNetics and explain the actions taken by the Board in response.
6. If evidence of even a single violation of any of the WFUHS agreements and/or misappropriation of IP is determined to have taken place, immediately call an emergency meeting of the Board of KeraNetics to demand the resignations of Messrs. Kim Westmoreland and Todd Johnson, and Dr. Luke Burnett from their positions with the Company, and if they do not comply, take such actions as necessary to terminate them from their positions, for their role as the management team tasked with compliance with these agreements.
7. If evidence of even a single violation of the WFUHS License Agreement is determined to have taken place, immediately pursue the remedies as called for in Section 17.10 of the License Agreement.

I further demand that the Board respond to this letter within 30 days, by August 29, 2014, in writing to me at the email address provided below. Said response should include specifically what actions have been taken by the Board regarding my demands enumerated above, any demands that the Board refuses to address, and any demands that the Board is in the process of addressing along with a projected timeline for addressing said in process demands. Failure to respond by this date will be viewed as the Board's denial of these allegations and refusal to address these issues, in which case information regarding these breaches will be communicated to WFUHS.

Respectfully Submitted,

Mark Van Dyke, PhD
Member, KeraNetics LLC
knmember@gmail.com